(March 13, 1912.)

# BAYARD T. BYRNS, Plaintiff, v. CITY OF MOSCOW, IDAHO, et al., Defendants.

[121 Pac. 1034.]

CITIES—TOWNS—PAVING STREETS — CONSTRUCTING SIDEWALKS—MUNICIPAL BONDS—LIMITATIONS OF INDEBTEDNESS—MUNICIPAL DEBTS —SPECIAL ASSESSMENTS.

(Syllabus by the court.)

1. Secs. 1 and 2, art. 12, of the constitution of this state grant to the legislature power and authority to provide for the incorporation, organization and classification of cities and towns, and such cities and towns have such power and authority as are provided by the laws enacted by the legislature.

2. The only limitation upon the power of the legislature is that it cannot authorize a city or village to incur any indebtedness or liability in any manner or for any purpose exceeding in that year the income and revenue for it for such year without the assent of two-thirds of the qualified electors thereof voting at an election.

3. It is within the power and authority of the legislature of the state to provide for the incorporation and organization of cities and villages, and to authorize such cities and villages to make public improvements such as paving, grading and guttering streets and the building of sidewalks and the construction of curbing, and providing that the cost of such improvements may be paid from the general levy of taxes, or by means of special assessments made against the property specially benefited, and that municipal bonds may be issued for the purpose of raising such revenue with which to pay for such improvements, and that all such regulations and matters are entirely within the power of the legislature and may be provided for by proper legislation.

4. Rev. Codes, sec. 2238, grants full power to cities and villages organized under the general law of the state to make contracts for the construction and building of such public improvements enumerated in such act, and to levy special assessments within an improvement district formed, for the full debt thereof, in proportion to the benefits derived to said property by said improvements, sufficient to cover the total cost and expenses of the work to the center of the street, and includes the construction of sidewalks, curbs, paving and gutters.

5. This same section, however, in paragraph 2 of subd. 6, requires that the expense of all improvements in the space formed by the junction of one or more streets or wherein one main street terminates in or crosses another main street, and also all street crossings and cross-walks, shall be paid by the city or village, and the latter is a city or village indebtedness and must be paid by the city or village.

6. Where streets are paved and the assessments are made against the abutting property according to the benefits, as provided in Rev. Codes, sec. 2238, improvement district bonds may be issued by the city upon the council passing proper ordinance authorizing the same without submitting the question of issuing the bonds to the electors or taxpayers of either the improvement district or the city, but where the cost and expenses are to be paid by the city and bonds are to be issued for the purpose of raising revenue to pay the same, then such question must be submitted to the electors and taxpayers of the city and must be by them authorized by proper vote. Rev. Codes, secs. 2315, 2316, and subsequent sections, as amended by Laws of 1909, p. 174.

7. Where several propositions with reference to the issuing of municipal bonds are to be submitted to the electors for vote, the same may be done in a single ordinance for that purpose, by stating such propositions separately so that the electors may express their desire and vote upon each singly. Where, however, the propositions to be determined are distinct and different propositions and are to be determined under different provisions of the statute, then there should be a separate ordinance with reference to each proposition.

8. Rev. Codes, sec. 2323, and the subsequent sections, which were originally adopted as the act of March 5, 1895, are repealed by the act of March 13, 1911.

An original application for writ of prohibition. Writ allowed.

W. M. Morgan, for Plaintiff.

This court has heretofore placed a construction upon chap. 12 of the code and upon sec. 3 of art. 8 of the constitution, and has decided that if the issuance of bonds creates an indebtedness or liability, then the city cannot issue them without a vote of the people. (*Veatch v. City of Moscow*, 18 Ida. 313, 21 Ann. Cas. 1332, 109 Pac. 722.)

G. G. Pickett, for Defendants.

The law in the case we understand to be that "different acts of the legislature unless repugnant will be construed together *in pari materia,* as providing two methods of· improvements." (28 Cyc. L. & Pr., p. 972, and cases cited.)

The latter of two acts passed at the same session of the legislature controls when they are inconsistent. (*Thomas v. Collins,* 58 Mich. 64, 24 N. W. 553; *Watson v. Kent,* 78 Ala. 602; *Hearn v. Brogan,* 64 Miss. 334, 1 So. 246; *Jeffersonville etc. R. R. Co. v. Dunlap,* 112 Ind. 93, 13 N. E. 403.)

STEWART, C. J.—This is an application for a writ of prohibition. It is alleged in the affidavit that the plaintiff is an actual *bona fide* resident in and taxpayer of the city of Moscow, Idaho, and that he resides upon and owns lots and lands subject to assessment and taxation in, and included in, the proposed improvement district, mentioned and described in a copy of an ordinance of the city of Moscow which is attached to the affidavit, and that said district embraces the property of the plaintiff and others, abutting upon and con·tiguous and tributary to Polk street, between the north line of C street and the south line of Third street, in the city of Moscow.

The affidavit also states, further, the fact that the city of Moscow is a municipal corporation, organized and incorporated under the general laws of the state of Idaho relating to the incorporation of cities, and is not organized or incorporated under any special or local laws; and that the defendants are the mayor and common council of said municipality; that on the 27th day of February, 1912, the city council of said city passed an ordinance which was duly approved by the mayor declaring the intention of the city and its city council to pave Polk street from the north line of C street to the south line of Third street, and that said mayor and city council threaten to and will, unless restrained and prohibited from so doing by order of court, proceed to pass and enact an ordinance for such improvement, and create and establish

a local improvement district to be called "Local Improvement District No. 1," which will embrace all the property fronting or abutting on or tributary to said Polk street between the north line of C street and the south line of Third street, including the property of plaintiff. The cost and expense of such improvement will be taxed and assessed against all property in such local improvement district, including the property of plaintiff; and that unless said mayor and common council are prohibited and restrained they will incur such indebtedness against said Local Improvement District No. 1 in the year 1912, in an amount greatly in excess of the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose; and that they also threaten, unless restrained and prohibited, to provide for the cost and expense of paving and otherwise improving said street, other than the junctions and intersections thereof with other streets, by instalments, instead of by levying the entire tax or special assessment for such costs at one time, and that for such instalments they will issue in the name of the said city of Moscow improvement bonds of the said improvement district, which said district will include the adjoining, contiguous and approximate property to said Polk street, between the north line of C street and the south line of Third street, including the property of plaintiff, and that said bonds will be issued and negotiated and disposed of without first calling an election either of the voters of said city of Moscow or of said improvement district to determine by their votes the question of whether said bonds should be issued and negotiated and sold; and that they will levy a special assessment each year sufficient to redeem the instalments of such bonds next thereafter maturing, and said assessments will be levied and made upon and against the real estate within said improvement district, including the property of the plaintiff; and said bonds when issued will be sold, and said assessments made and levied will become a lien and encumbrance upon the property of plaintiff.

And it is further alleged that unless said mayor and common council be prohibited and restrained, they will cause the junctions and intersections of streets within said district to be paved and repaired, and cause to be made and repaired storm sewers in said streets within said improvement district, which storm sewers are a part of the general improvement thereof; and that they will incur an indebtedness and liability against the city of Moscow in the year 1912 in an amount exceeding the income and revenue provided for it for such year, without the assent of the qualified electors of said city or district, and will dispose of such bonds of the city of Moscow in order to raise money with which to pay the cost of paving said street intersections and junctions and of building and repairing said storm sewers, and will levy and cause to be levied assessments against plaintiff's property in order to pay the principal and interest of the same, and that such bonds and assessments will be a lien upon the property of plaintiff and a cloud upon its title.

To this affidavit an answer was filed, and also a stipulation admitting the facts practically as alleged in the affidavit.

It appears from the affidavit, answer and stipulation that the city of Moscow desires to make certain improvements in said city and to issue municipal bonds of said city for three distinct purposes: First, to pave and improve certain streets within an improvement district created by proper ordinance, and to assess the abutting and adjoining property upon such streets, and to pay the costs of such improvements by issuing municipal district improvement bonds of said city for the purpose of raising revenue to pay for the same; second, to pave the intersection of streets, crossings and cross-walks and the space formed by the junction of two or more streets or where one main street terminates in or crosses another main street, and to pay the costs of such improvements by issuing municipal bonds for the purpose of raising revenue to pay the same; third, for the purpose of constructing a storm sewerage system and the issuing of municipal bonds for the purpose of raising revenue for the payment of the cost of the same.

It is admitted by counsel for the respective parties that the city, in order to carry out its purpose, has been proceeding, and will proceed in constructing such improvements and the issuing of bonds, under the provisions of Rev. Codes, sec. 2238, as amended by chap. 81, p. 266, Laws of 1911.

It is contended, however, on the part of the plaintiff, that the city of Moscow is prohibited from making contracts for the improvements proposed, and from issuing municipal bonds for the purpose of raising revenue to pay for the same, by reason of the fact that such improvements cannot be authorized and such indebtedness cannot be created in any city where, at the last preceding city election held, less than 500 votes were cast for the mayor, as provided by an act of Feb. 14, 1911, amending sec. 2323 of the Rev. Codes of Idaho, as follows:

"All incorporated cities of this state, except cities organized or incorporated under special or local laws of Idaho, in which, at the last preceding city election held prior to the filing of the petition, or the casting of the vote of the members of the city council, mentioned in sec. 2328, there were cast five hundred or more votes for mayor, shall have the powers and be subject to all the provisions of this chapter; and this chapter shall be applicable only to all such cities organized or incorporated under general laws of this state, and shall not be applicable to incorporated cities organized or incorporated under special or local laws of Idaho."

Referring first to the constitutional provisions with reference to the incorporation, organization and classification of cities and towns, we think that the constitution, art. 11, secs. 1 and 2, clearly confers power upon the legislature to provide for the incorporation, organization and classification of cities, and that such cities and towns shall have the power and authority given them by the laws enacted by the legislature. And where the legislature enacts laws providing the method to be adopted and followed by cities and villages in making local improvements, such cities and villages are required to pursue the methods and provisions of the law authorizing such improvements. In other words, there are no constitu-

tional limitations which prohibit the legislature in authorizing cities and towns to enter into contracts for the construction of public improvements and to provide means and methods of paying the cost of such improvements, such as paving, draining and guttering streets, building sidewalks, constructing curbing and otherwise improving streets and sidewalks, and the construction of gutters and drains; and that the costs of such improvements may be raised by a general levy of taxation, or by means of special assessments against property specially benefited, and that municipal bonds may be authorized and issued for the purpose of raising revenue with which to pay for such improvements; and that all such regulations are matters entirely within the power of the legislature and may be provided for by proper legislation; and that the only constitutional limitation upon cities and towns is that found in sec. 3, art. 8 of the constitution, which provides: "No county, city, town, township, board of education, or school district, or other subdivision of the state shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election," etc. The legislature therefore may pass such laws as they deem wise and proper conferring power upon cities and villages to make public improvements, and such improvements may be paid for in the manner prescribed by law, except that in so doing such city and town cannot incur any indebtedness or liability in any manner or for any purpose exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election.

The first question for determination therefore is: Do the provisions of sec. 2238 of the Rev. Codes, as amended by the act of March 13, 1911, authorize and empower cities, organized under the general laws of the state, to make contracts for the paving of streets and the building of sidewalks and the construction of storm sewers? We think there can be no question but that this section clearly and beyond any question

whatever confers full power and authority upon the mayor and common council of all cities within the state to enact ordinances providing for the paving and improvement of streets and the building of storm sewers and drains and for the construction of sidewalks. Subd. 3 of said section provides: "Establish, lay out, alter, open any streets or alleys, and improve, repair, light, grade or sprinkle, drain the same and remove any and all obstructions therefrom, establish grades and construct bridges, cross-walks, culverts and sewers thereon and repair and maintain the same. . . . . " And subd. 4 provides: "Provide by general ordinance for the construction and repair of sidewalks. . . . . " And subd. 5 provides: "Sidewalks, curb, plank, pave, gravel, macadamize, gutter, grade or sprinkle any highway, street or alley therein, in whole or in part. . . . . " By such act power is granted to cities and villages to make contracts for the construction and building of such enumerated improvements, and it follows that the city of Moscow, as a city organized under the general laws of the state, has full authority to make contracts and construct all of the improvements proposed by them, and for which they have passed preliminary ordinances for the purpose of initiating proper proceedings for such improvements. The proposed paving and storm sewerage improvements and the construction of sidewalks are all fully authorized by, and fall clearly within the provisions of sec. 2238 of the Rev. Codes as amended.

The next inquiry is as to the issuing of bonds for such purpose. Under the provisions of this same act it is specifically provided under paragraph 1, subd. 6: "The assessment of the cost and expense of any work or improvement provided for in subdivisions third and fifth of this section, shall be assessed upon the abutting, contiguous and tributary lots and lands, and lots and lands included in the improvement district formed, each lot and parcel of land being separately assessed for the full debt thereof in proportion to the number of feet of such lands and lots fronting thereon, or included in the improvement district, and in proportion to the benefits derived to said property by said improvements sufficient to

cover the total cost and expense of the work to the center of the street.''

The improvements, for which the costs and expenses are required to be assessed upon the abutting, contiguous and tributary lots and lands included in the improvement district formed, and referred to in the paragraph above, includes sidewalks, curbs, paving and gutters. Gutters and drains as used in subds. 3 and 5, referred to in the above paragraph, evidently mean the same thing as storm sewers, as alleged in the affidavit, and are constructed and paid for in the same manner as, and as a part of, the improvement of the street.

Paragraph 2 of subd. 6 provides: ''The expense of all improvements in the space formed by the junction of two or more streets, or wherein one main street terminates in or crosses another main street, and also all street crossings or cross-walks shall be paid for by such city or village.'' The statute then clearly prescribes the procedure to be followed by the mayor and common council, and the provisions to be incorporated in the ordinance providing for such improvements, and the making of assessments, and in subd. 11 and subsequent sections provisions are made for issuing improvement bonds of the district. The statute thus fully and completely provides for special assessments of abutting, contiguous and tributary lots and lands, and the issuance of improvement bonds.

Under the provisions of this statute the question of whether the improvements shall be made and bonds issued as provided therein is a matter to be determined by the mayor and common council in accordance with the provisions of the statute, and such question is not required to be submitted to a vote of the taxpayers or electors of either the improvement district or the city, and the debt is a debt against the property benefited by such improvement, and is not a debt of the city, and the making of such improvements and the issuing of said municipal bonds will not create an indebtedness of the city, and such indebtedness will not be subject to the limitations provided in sec. 3, art. 8 of the constitution. The cost, however, of paving the space formed by the junction of two or

more streets, or wherein one main street terminates in or
crosses another main street, and also all street crossings or
cross-walks, is made a city indebtedness under the provisions
of this section, and must be paid by the city out of a fund to
be provided by the city either by a general tax levy or by
the issuance of municipal bonds. If bonds are to be issued,
then the question of issuing such bonds must be submitted to
the electors.

Subd. 28 of said section grants power to cities to borrow
money on the credit of the city. Rev. Codes, secs. 2315, 2316
and subsequent sections, as amended by Laws of 1909, p. 174,
authorizes cities and towns incorporated under the laws of said
state or territory to issue municipal bonds for certain pur-
poses, and the procedure to be pursued. As to whether such
bonds shall be issued is required to be submitted to the elec-
tors who are taxpayers in such city, and when bonds are to
be issued by a city to pay city indebtedness, they must be
issued in accordance with these provisions of the statute. In
the case now under consideration, the bonds proposed to be
issued by the city for the city's share of the costs of the im-
provement proposed, that is, the cost incurred by the city in
paving, guttering and draining the space formed by the
junction of two or more streets, or wherein one main street
terminates in or crosses another main street, and also all
street crossings and cross-walks, must be submitted to the
electors and taxpayers of the entire city as required by the
code, secs. 2315, 2316 and subsequent sections, and must be
authorized by such vote. It is clear, therefore, that under
the provisions of the statute the city of Moscow, in order to
make the proposed improvements, must proceed under two
separate ordinances, one of which should provide for the
issuance of municipal bonds for the purpose of raising revenue
to pay for the city's share of the improvements upon the
approval of the electors who are taxpayers of the city, and
the other ordinance should provide for the issuing of bonds
by the city council, under the provisions of sec. 2238 of the
Rev. Codes, as amended by the Laws of 1911.

The city of Moscow, therefore, is clearly authorized and empowered to pass proper ordinances for the proposed improvements, and in adopting such ordinances they may incorporate in a single ordinance different propositions, and in so doing should state each proposition separately and distinctly, and especially so where such propositions are required to be voted upon before such city is authorized to issue municipal bonds for the purpose of raising revenue to pay for the same, so that the electors may be given full opportunity to understand the propositions and express by their ballot the desire of each voter upon each separate proposition. In the present case there are two distinct and different propositions, one of which is to be determined upon a proper petition and vote of the council, and the other of which requires action by the council and also requires a vote of the electors of the city. The procedure, therefore, alleged in the affidavit shows very clearly that the city of Moscow has not followed the procedure required by the statute.

This brings us to the question whether the city of Moscow can make contracts and issue bonds for the improvements proposed, by reason of the fact that at the last preceding city election prior to the filing of the petition or the casting of the vote of the members of the council there were cast less than five hundred votes, and whether sec. 2323, Laws of 1911, p. 29, applies to the making of improvements and issuing bonds under the provisions of sec. 2238 of the Rev. Codes, as amended by the Laws of 1911, and the issuing of bonds under the provisions of sec. 2315 and the succeeding sections, as amended by the Laws of 1909. Upon this question we think it is clear that said section has no application to the facts of the case. This latter amendment is an amendment to sec. 1 of the act of March 5, 1895, and incorporated in the code as sec. 2323, and comparing that act as originally passed with the act of March 4, 1893, Laws of 1893, p. 97, we find that both of said acts authorize municipalities to construct sidewalks and to curb and pave streets and to levy a special tax on lots and parcels of land fronting on such streets and to pay the expense therefor, and that municipal

bonds may be issued by such city. The act of 1895, however, grants such powers to all incorporated cities of the state which at a preceding city election cast seven hundred votes for mayor, and makes such act applicable to all such cities; while the act of 1893 grants the same power to all incorporated cities other than those incorporated under special or local laws, without reference to the vote for mayor at the last preceding city election.

Sec. 69 of the act of 1893 has been amended and continued in force by enactments of the legislature at almost every session of the legislature since its first adoption, and by said amendments additional powers have been given to cities and villages organized under the general law of the state, and by such amendments full authority is granted to construct and repair sidewalks, and to curb and pave streets and alleys and levy a special tax on lots or parcels of land fronting upon such streets and alleys, and authority is also granted to issue municipal bonds; and in all of said amendments a provision is contained specifically repealing all laws in conflict with the provisions of said section.

By these various legislative enactments it is clear to our minds that the legislature intended to apply the provisions of the act of 1893 to all cities and villages organized and incorporated under the general laws of the state, while the act of 1895 was no doubt intended to provide a certain system for constructing public improvements and the issuing of municipal bonds for the payment of the cost of paving streets, and building sidewalks, and that such provisions were intended as an additional method to that already provided by the act of 1893, or it may be that the legislature overlooked the act of 1893, as such provisions appear to have never become operative because of the fact that the former statute and former method have been applied and approved in making municipal improvements. And whether or not repealed by the subsequent amendments prior to March 13, 1911, we are of the opinion that the amendment of March 13, 1911, clearly repeals the act of 1895 and the amendment made and

approved February 14, 1911, and that such provisions are no longer in force or applicable in such matters.

We therefore hold that sec. 2323 of the Rev. Codes and all parts of the act of 1895 are in conflict with the provisions of sec. 2238, as amended by the Laws of 1911, p. 266, and were repealed and are not in force, and that the city of Moscow is in no way required to follow the procedure therein prescribed. A writ of prohibition in this case, although allowed by this opinion, will not be issued under stipulation of counsel. Costs awarded to plaintiff.

Sullivan, J., concurs.