141 P.3d 1117

T. Patton MANN, Plaintiff–Respondent,

and

Nadine Hoepfer, Plaintiff,

v.

The GRANITE REEDER WATER
AND SEWER DISTRICT,
Defendant–Appellant.

No. 31587.

Supreme Court of Idaho,
Coeur d'Alene, April 2006 Term.

Aug. 14, 2006.

authorizing IDOC to employ and pay up to 1554.4 full-time equivalent employees.

Preston, Gates & Ellis, LLP, Coeur d'Alene, for appellant. Peter G. Scott argued.

John F. Magnuson, Coeur d'Alene, for respondent.

SCHROEDER, Chief Justice.

Granite Reeder Water and Sewer District passed an ordinance in 2003 to form a local improvement district and authorize improvement projects for sewer treatment facilities within the improvement district. The Respondents claim the ordinance authorizes Granite Reeder to incur debt that exceeds its revenue for the year and is a general obligation of the district which must be submitted to the district's voters. The district maintains a vote is not required because the project would be funded by a special assessment against the benefited property within the improvement district not by a general obligation of the district. The parties stipulated to facts. The district court declared the ordinance void and enjoined Granite Reeder from contracting with the United States in relation to the project. Granite Reeder moved for new trial, but its motion was denied. This appeal followed.

## I.

## BACKGROUND

Granite Reeder is a water and sewer district organized according to Title 42, Chapter 32 of the Idaho Code. Idaho Code § 50–1703 authorizes water and sewer districts to form local improvement districts and to construct improvements to their facilities for the benefit of property within the improvement districts. The Respondents own property within Granite Reeder. In June 2003 Granite Reeder passed Ordinance No.2003–2 which formed "Local Improvement District No. 1" to acquire, construct, and install improvements to Granite Reeder's sewage-treatment system for the benefit of properties within the improvement district. The ordinance estimated the project's cost to be about $5.3 million, about fifty-eight percent of which (roughly $3 million) was to be paid from assessment levies on the properties benefited by the improvements. The remaining forty-two percent was to be paid "from other legally available funds, including grant funds and other legally available funds of the district." The ordinance also appointed an engineering firm to draw up a wastewater facilities plan for the project.

The improvements' costs included the cost of acquiring real property. In devising its plan for facilities within the improvement district, and before it passed the ordinance, Granite Reeder determined that it may need to acquire land from the federal government for facilities that would serve properties within the local improvement district. Granite Reeder stipulated that the cost of acquiring this land would exceed the District's annual income and revenue. In December 2004 Congress approved the sale of roughly 80 acres to Granite Reeder. This property was not within Granite Reeder's boundaries at that time, but apparently the U.S. Forest Service has petitioned to have the property annexed into the water and sewer district. The ordinance does not refer to the purchase of the property from the United States, and

to date no contract between these parties for this land apparently exists.

After the ordinance passed, Granite Reeder applied for a loan from the Idaho Department of Environmental Quality. Idaho's Water Pollution Abatement Act authorizes DEQ to lend municipalities, including water and sewer districts, funds to construct wastewater treatment facilities. In November 2003, after the ordinance was passed and after this suit had commenced, DEQ offered to lend Granite Reeder $3,135,000, which, according to the loan agreement, would create a special obligation of Granite Reeder, payable from assessments levied against the properties benefited within the improvement district. The loan agreement stated specifically that the loan would not be a general obligation of Granite Reeder. Granite Reeder estimated its project's cost to be $5.3 million. According to the loan agreement, the remaining funds for Granite Reeder's project would come from two other sources: (1) $2,226,000 from a "STAG" grant; and (2) $250,000 from "Other" sources, bringing the total amount of funds to the necessary $5.3 million.

The engineering firm hired by Granite Reeder proposed in its wastewater facilities plan three alternatives for acquiring the real property necessary to the project. One alternative involved Granite Reeder acquiring a special use permit, another proposed a land swap, and the final proposal called for an outright purchase of the property, which had been assessed at $236,000. The Respondents claim that the ordinance authorizes and/or requires Granite Reeder to contract with the United States to purchase real property, and that the contract would cause the district to incur debt in the form of a general obligation that exceeds the district's revenue for the year. They maintain that I.C. § 42–3222 requires the district to submit the ordinance to the voters in the district. Section 42–3222 provides that if a water and sewer district deems it necessary to acquire, construct, install, or complete an improvement, or, deems it necessary to contract with a person or entity to carry out the district's purposes, and, to do so requires "the creation of an indebtedness that will exceed the income and revenue provided for the year," the board of the district must submit the "proposition of issuing such obligations or bonds, or creating other indebtedness to the qualified electors of the district."

The Respondents sought declaratory and injunctive relief invalidating the ordinance and barring Granite Reeder from contracting with the United States for any purpose related to the plan as detailed in the engineering firm's wastewater facilities plan. Granite Reeder defended on the basis that the Local Improvement District Code authorizes it to levy assessments against the benefited property and issue local improvement bonds without submitting the ordinance to the voters in the district. Granite Reeder distinguished the kind of debt contemplated in § 42–3222 from the ordinance's authorization to acquire property and raise funds for the acquisition by issuing local improvement bonds pursuant to §§ 50–1722 and 50–1723. Idaho Code §§ 50–1719 and 50–1721 provide that bonds issued under the Local Improvement District Code are liens against the property benefited and assessed; Section 50–1723 in turn provides that when local improvement bonds are issued, the municipality is not liable for them. Consequently, when a water and sewer district raises funds by issuing local improvement bonds and levying against the benefited properties within the improvement district, the municipality does not create a general obligation of the district. According to Granite Reeder, § 42–3222 does not apply and no vote is required.

The parties stipulated to the facts upon which the district court issued its judgment. The district court invalidated the ordinance to the extent that the ordinance authorized Granite Reeder to "contract with the United States which pertains, in any way, to the proposed 'Granite/Reeder Sanitary Sewer System' as detailed by the [engineering firm's] 'Wastewater Facilities Plan,' and any amendments thereto." The court also ruled that the ordinance violated the due process rights of the district's voters since the ordinance was required to be put to a vote and was not. The district court permanently enjoined Granite Reeder from contracting with the United States "for any purpose related, whether directly or indirectly, to the proposed Granite/Reeder Sanitary Sewer System as detailed in the [engineering firm's]

'Wastewater Facilities Plan,' and any amendments thereto." Granite Reeder appealed.

## II.

### THE DISTRICT COURT ERRED IN INVALIDATING THE ORDINANCE

#### A. Standard of Review

■ The district court decided this case on stipulated facts. When the district court will be the trier of fact, its factual findings will not be disturbed unless they are clearly erroneous. Idaho R. Civ. P. 52(a). The Supreme Court exercises free review over questions of law. *Weiland v. Ruppel,* 139 Idaho 122, 124, 75 P.3d 176, 178 (2003).

#### B. Local Improvement Bonds that will be Paid Back by Special Assessment of the Benefited Property are not Subject to the Election Requirement in I.C. § 42–3222.

■ Idaho Code § 50–1703 authorizes municipalities, including water and sewer districts, to create local improvement districts, levy assessments on the property within the improvement districts benefited by improvement projects, and issue interim or registered warrants and local improvement bonds. I.C. § 50–1703(b). When a water and sewer district issues local improvement bonds and assesses benefited property to pay back those bonds, the assessment is a lien against the property assessed. I.C. §§ 50–1719, 50–1721. The water and sewer district is not liable for the obligation evidenced by the bonds. Any claim by a bondholder is against the property within the local improvement district. I.C. § 50–1723. Any bond so issued must have emblazed on it a copy of § 50–1723. *Id.* Nothing in the Local Improvement District Code requires an election based on the amount of the obligation relative to the district's income and revenue for the year.

Title 42, Chapter 32 authorizes the creation of water and sewer districts and bestows upon them certain powers. Water and sewer districts are authorized to "borrow money and incur indebtedness and evidence the same by certificate, notes or debentures and to issue bonds...." I.C. § 42–3212(e).[1] A water and sewer district's authority to incur debt is limited, however, by § 42–3222, which provides:

Whenever any board shall, by resolution, determine that the interest of said district and the public interest or necessity demand the acquisition, construction, installation or completion of any works or other improvements or facilities, or the making of any contract with the United States or other persons or corporations, public or private, municipalities, or governmental subdivisions, to carry out the objects or purposes of said district, requiring the creation of an indebtedness that will exceed the income and revenue provided for the year, said board shall order the submission of the proposition of issuing such obligations or bonds, or creating other indebtedness to the qualified electors of the district at an election held, subject to the provisions of section 34–106, Idaho Code, for that purpose.

This Court has never addressed Section 42–3222's application in the context of bonds issued under the Local Improvement District Code. However, this Court has recognized a distinction between bonds to be paid back by special assessment against benefited property within an improvement district and debt incurred by a municipality, at least in the context of Idaho Const. art. VIII, § 3, which generally prohibits any municipality from incurring a debt larger than its revenues for that year without a two-thirds-for vote.

In *Byrns v. City of Moscow,* 21 Idaho 398, 121 P. 1034 (1912), the Court distinguished debt incurred by a city from bonds issued pursuant to a local improvement district ordinance that were to be paid back by special assessments against the benefited property. In 1912, Idaho Const. art. VIII, § 3 provided that the State's political subdivisions could not incur any indebtedness in any manner for any purpose exceeding in that year the income and revenue provided for the subdivision without the assent of two-thirds of the

1. The authority of a district to incur debt applies to district-wide projects and not projects within a local improvement district: as noted above, the authority to finance projects within an improvement district appears to be limited to assessing the benefited property.

voters unless certain conditions not at issue in *Byrns* occurred. The plaintiff alleged that the City of Moscow, having created a local improvement district, intended to pursue a project that exceeded the city's revenues for the year and issue special assessments against Mr. Byrns's property without first putting the question to the voters. 21 Idaho at 402, 121 P. at 1035. The Court held that where "the debt is a debt against the property benefited by such improvement, and is not a debt of the city, and the making of such improvements and the issuing of said municipal bonds will not create an indebtedness of the city," Idaho Const. art. VIII, § 3 required no vote. 21 Idaho at 406, 121 P. at 1037; *see also Elliott v. McCrea,* 23 Idaho 524, 529–30, 130 P. 785, 786 (1913) (distinguishing a tax from an assessment according to benefits received and holding statute providing drainage districts may assess properties not subject to Idaho Const. art. VIII, § 3).

In *Byrns* or *Elliott,* a statute like § 42–3222 was not at issue.[2] The wording of the constitutional provision in each case specifically prohibited *the municipality* from incurring the debt. Ownership of the debt—by the municipality or the property benefited—was apparently significant to the Court when interpreting art. VIII, § 3.

Idaho Code § 42–3222 is phrased in the passive tense without indicating whether the statute is triggered only if that indebtedness is owed generally by the district as a whole, or, if it is also triggered if the debt is held specifically by the properties benefited. The section provides that when any project or contract "requiring the creation of an indebtedness" is proposed, such proposal must be submitted to the voters. Respondent's argument is that § 42–3222 refers to any proposed action of the board that will create a debt exceeding the district's annual revenue—whether it be paid back by special assessment or not. However, there is compelling logic for the contrary conclusion.

Local improvement districts may well be created to benefit only a portion of the water and sewer district. There may be several improvement districts in any one water and sewer district. Since bonds issued under the Local Improvement District Code expose the water and sewer district to no liability, and thus do not affect the water and sewer district's credit or risk, voters outside of an improvement district have no interest in a project that does not affect their property or the political subdivision to which they pay taxes. Or, if the improvement district contained a minority of the voters within the whole district, the will of the voters outside the improvement district could be imposed on that minority, thus forcing that minority to be assessed costs for a project they may not want. While the district itself can do that, the power is expressly conferred by statute. If the residents in an improvement district have the project forced upon them by the board, they are free to vote their representatives in the district out of office. It makes sense, as § 42–3222 provides, for all the qualified voters in a district to vote on matters affecting the whole district. But the justification for requiring a district-wide vote on matters not affecting the district or voters outside the improvement district is difficult to identify.

The intent of § 42–3222 is to require water and sewer districts to submit to the voters only proposed obligations that the district will incur. In light of the difference in character between general obligations of a municipality and the practice of specially assessing properties benefited by local improvements, the Court determines that such bonds are not within the purview of § 42–3222.

**C. The Ordinance does not Require or Authorize Granite Reeder to Incur a General Indebtedness; the Ordinance Merely Authorizes the Issuance of Local Improvement Bonds to be Paid Back by Special Assessment of the Benefited Properties within the Improvement District.**

■ The Respondents alleged that the DEQ loan and the STAG grant still leave Granite Reeder $250,000 short of the $5.3

---

2. It does not appear that I.C. § 42–3222 had a predecessor prior to its enactment in 1947. *See* 1947 Idaho Sess. Laws ch. 152, p. 364. The authority of municipalities to create sewer districts and local improvement districts within sewer districts appears to have been established in 1905.

million total cost of the project. It appears from the DEQ–Granite Reeder loan agreement that the STAG grant will net the district $2,226,000. According to the agreement, only about $40,000 of that grant money is allocated for land acquisition. How that $40,000 figure was arrived at is not clear. The agreement notes that the property Granite Reeder intends to acquire is worth about $364,800, and that it will receive $185,000 from the sale of the excess 20 acres. To make up the shortfall the respondents argue Granite Reeder must incur a general obligation.

The district court's ruling appears to have been based in large part on stipulated fact number 21: that the district knew before it adopted the ordinance that the proposed system improvements could require a contract with the United States and that the system improvements would require the creation of an indebtedness that would exceed the district's annual income and revenue. The district court found that the asserted $250,000 shortfall would require Granite Reeder to incur a general indebtedness, which would then be paid back when the district sells the excess 20 acres. It found further that the ordinance was predicated on a contract with the United States that would create a general indebtedness on the part of the district.

There are several problems with the district court's order. The ordinance does not require or authorize Granite Reeder to incur a general obligation as part of the project's costs. Section 6 of the ordinance provides that fifty-eight percent of the $5.3 million "shall be paid from a levy of assessments on the property benefited." And the "remaining costs of the Project shall be paid with grant funds and other legally available funds of the District." The ordinance does not authorize a contract that will require a general obligation of the district.

Concerning DEQ loan money, the Respondents argue that DEQ's loan program manager, William Jerrel, stated in an affidavit that "[i]n the event of a default by the district, DEQ reserves the right [in the DEQ Loan Offer] to declare the entire principal amount owed by the district due and payable." However, the loan agreement itself acknowledges that the loan will be paid back by assessing the properties within the improvement district. In such a case, DEQ would not have a claim against the district— under § 50–1723 the only claim would be against the property.[3] As the project goes forth, the Respondents might have a claim against Granite Reeder if it executes a loan agreement with DEQ or with the United States that violates the ordinance or state law, or if Granite Reeder attempts to issue bonds that evidence a debt belonging to the district that exceeds the district's revenue for that year. But the ordinance as written is not subject to I.C. § 42–3222 and does not violate the statutory requirements.

**D. The District Court's Ruling Voiding the Ordinance because the Ordinance Contemplates the Purchase of Property Outside the District's Boundaries is not Supported by the Record.**

In its order denying Granite Reeder's motion for new trial, the district court added another reason for voiding the ordinance: it contemplated the purchase of property situated outside Granite Reeder's boundaries. Idaho Code § 50–1703(a)(11) authorizes districts to acquire real property within the municipality. Assuming this provision means water and sewer districts cannot acquire property outside their municipalities, the district court's ruling is still incorrect. There is no evidence, either in the ordinance itself or the stipulated facts that the property is outside the boundaries of the district. The ordinance does not identify a specific piece of property and does not purport to authorize the acquisition of property outside the district. Additionally the issue does not appear to have been litigated fully below. The rec-

---

3. This contract has some confusing characteristics to it. Despite its acknowledgment that the loan will be paid back by special assessments of the properties within the improvement district, it refers to the district as the borrower. And as Mr. Jarrel stated in his affidavit, the contract (at Section III. I.) also indicates that the district will be liable in a case of default. Since the bonds Granite Reeder intends to issue are of the kind that do not subject the district to liability, it would seem that the district would have required language in the contact expressly referencing § 50–1723 and expressly disclaiming any liability for default.

ord is inadequate to determine the validity of Granite Reeder's arguments that it will not purchase the property until it is annexed into the district. Again, however, this argument centers on matters and potential agreements outside the ordinance. The validity of the ordinance cannot now be challenged. If the respondents believe a specific contract pursuant to that ordinance violates the law, the claim can be made then.

## III.

### CONCLUSION

The district court's order is reversed. Granite Reeder is awarded costs. No attorney fees are awarded.

Justices TROUT, EISMANN, BURDICK and JONES concur.