(April 26, 1923.)

STATE OF IDAHO, on the Relation of C. C. MOORE, Individually, and as Governor of the State of Idaho, Plaintiff, v. D. F. BANKS, Treasurer of the State of Idaho, Defendant.

[215 Pac. 468.]

MANDAMUS—STATUTE EMBRACING TWO DISTINCT SUBJECTS UNCONSTITUTIONAL.

1. Chapter 90, Sess. Laws 1923, is repugnant to the provisions of sec. 16, art. 3, of the constitution of Idaho, in that it embraces

---

Publisher's Note.

1. Validity of statute authorizing incurring of indebtedness or the appropriation of money for two or more purposes, see notes in 61 Am. Dec. 337; 14 L. R. A., N. S., 519.

more than one subject and matters properly connected therewith. The negotiation and sale of general fund treasury notes and the negotiation and sale of refunding bonds are two separate and distinct subjects, neither of which is properly connected with the other. Neither of these subjects can be by any fair intendment considered as falling within the subject matter legislated upon or necessary as means to the attainment of the other.

2. Where a legislative act embraces two distinct subjects, in contravention of the provisions of sec. 16, art. 3, of the constitution, and one appropriation is made in the act to supply funds to carry both into effect, without indicating what proportionate share was intended for each purpose, the entire act must fall.

Original proceeding in *mandamus* to compel issuance of refunding bonds. Alternative writ quashed and action *dismissed.*

A. H. Conner, Attorney General, and James L. Boone, Assistant, for Plaintiff.

H. B. No. 129 does not contravene the provisions of art. 3, sec. 16, of the constitution of the state. (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *State v. Pioneer Nurseries Co.,* 26 Ida. 332, 143 Pac. 405; *Kessler v. Fritchman,* 21 Ida. 30, 119 Pac. 692; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; Cooley's Const. Limitations, 7th ed., 205; Lewis' Sutherland on Statutory Construction, 2d ed., 184; 25 R. C. L., secs. 82–92, 834–847; *Veatch v. City of Moscow,* 18 Ida. 313, 21 Ann. Cas. 1332, 109 Pac. 722; Dillon's Municipal Corp., sec. 202; 5 McQuillin, Municipal Corp., sec. 22; *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234.)

Art. 3, sec. 16 should receive a liberal construction. (*Pioneer Irr. Dist. v. Bradley, supra; Winters v. City of Duluth,* 82 Minn. 127, 84 N. W. 788; *State v. Board of Commrs.,* 21 Nev. 235, 29 Pac. 974; *Johnson v. Harrison,* 47 Minn. 575, 28 Am. St. 382, 50 N. W. 923; *Great Northern Ry. Co. v. Duncan,* 42 N. D. 346, 176 N. W. 992; 36 Cyc. 1017; Lewis' Sutherland on Statutory Construction, sec. 115; 25 R. C. L., sec. 85, p. 837.)

An act does not violate art. 3, sec. 16, which includes matters germane to and bearing a natural relation with the general subject of the act. (*Pioneer Irr. Dist. v. Bradley,* *supra;* 25 R. C. L., sec. 90, p. 843; Lewis' Sutherland Stat. Const., sec. 118; Cooley's Const. Limitations, 202–214.)

State finance is the "subject" of House Bill No. 129. Considered in a more restricted sense, however, House Bill No. 129 relates to state securities, undoubtedly a phase of state finance.

The subject of an act may be constructed by linking together the various minor matters embraced within the single subject indicated in the act. (*Pioneer Irr. Dist. v. Bradley, supra; Great Northern Ry. Co. v. Duncan, supra.*)

Dean Driscoll, for Defendant.

It appears on the face of House Bill No. 129, and particularly in sec. 5, that the act embraces more than one subject and matters properly connected therewith, in that it not only appropriates moneys for the payment of expenses incident to the negotiation and sale of refunding bonds, but also contains a like appropriation for expenses incident to the negotiation and sale of general fund treasury notes, and is therefore violative of sec. 16, art. 3, of the constitution of the state. (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *Hailey v. Huston,* 25 Ida. 165, 136 Pac. 212; *State v. Pioneer Nurseries Co.,* 26 Ida. 332, 143 Pac. 405.)

BUDGE, C. J.—This is an original action for writ of mandate to compel defendant, State Treasurer, to issue and sell certain refunding bonds under the provisions of an act of the Seventeenth Session of the Legislature, designated as House Bill 129, Sess. Laws 1923, p. 105. The application for the writ alleges that there is $776,500 of outstanding bonded indebtedness which should be refunded because it would result in a saving to the state. An alternative writ was issued and defendant made his return thereto in which he justified his refusal to act upon the alleged ground that

the statute is unconstitutional. Plaintiff demurred to the return, and the case was heard and submitted upon the demurrer. The provisions of the act are as follows:

"Section 1. The state treasurer, with the approval of the governor, is hereby authorized and directed to compromise and refund the bonded indebtedness of the state of Idaho, or any portion thereof, whenever it may be done at a saving to the state, by issuing and selling refunding bonds pledging the full faith and credit of the state of Idaho; *Provided,* That such refunding bonds do not bear a rate of interest greater than that borne by the bonds to be refunded nor run for a period greater than twenty years; and *Provided, further,* That the total amount of such refunding bonds issued at any one time does not exceed the total amount of bonds to be refunded at such time.

"Sec. 2. The refunding bonds referred to in Section 1 of this act may be sold for cash only, and to the highest and best bidder at a public sale advertised for at least five days prior to such sale; *Provided, However,* That any and all bids may be subject to rejection.

"Sec. 3. There is hereby created a fund in the state treasury to be known as the 'Bond Refunding Fund.' All moneys received from the sale of refunding bonds in accordance with the provisions of this act shall be by the state treasurer deposited to the credit of such fund. The bonds to be retired and paid shall be paid from any moneys in such fund, and an appropriation is hereby made for such purpose from any moneys that may accrue to such fund; . . . .

"Sec. 4. Whenever refunding bonds have been sold and the bonds are ready for delivery, the state treasurer shall advertise in at least one issue of a paper published in New York City, and any other papers he may consider necessary, an official notice calling the bonds to be retired and paid, stating that interest will cease on the next coupon due date, and that the principal and interest of such bonds will be paid at the office of the state treasurer or at the office of the

fiscal agent of the state of New York, on or after the next interest due date.

"Sec. 5.    There is hereby appropriated out of any moneys in the general fund of the state treasury, not otherwise appropriated, the sum of three thousand dollars, to pay any expense, including legal services, incident to the negotiation and sale of general fund treasury notes and refunding bonds. . . . . ''

The constitutionality of this act is questioned. It is first contended that section 5, appropriating moneys out of the general fund to pay expenses incident to the negotiation and sale of general fund treasury notes and refunding bonds, is in violation of sec. 16, art. 3, of the constitution, which provides that:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

An examination of the title and the act discloses that the subject is embraced in both and therefore in compliance with sec. 16, art. 3, but the act is still repugnant to that section, for the reason that it embraces more than one subject and matters properly connected therewith. The negotiation and sale of general fund treasury notes and the negotiation and sale of refunding bonds are two separate and distinct subjects. The former has nothing to do with the indebtedness of the state (*State v. Eagleson,* 32 Ida. 276, 181 Pac. 934; *State v. Eagleson,* 32 Ida. 280, 181 Pac. 935), while the latter has. The former is in no sense properly connected with the latter. The acts are individualized. Each is independent of the other and neither can be, by fair intendment, considered as falling within the same subject matter legislated upon or necessary as ends and means to the attainment of each other. Neither is directly or indirectly related to the same subject. In the case of *Hailey v. Huston,* 25 Ida. 165, 136 Pac. 212, this court, in discussing sec. 16, art.

3, with reference to an appropriation act increasing the compensation of the librarian of the State Historical Society, where the title of said act or the act failed to repeal a prior act fixing the salary for such officer, in the course of that opinion says:

"The subject of the increase of any salary is not expressed in the title of the appropriation act, and as that subject is not expressed in the title of the act, an increase of salary cannot be included in such act. *And if it were included in the title to said act, the act would be obnoxious to the constitution under another provision of sec. 16, which declares that every act shall embrace but one subject and matters properly connected therewith. A general appropriation act includes one subject and an increase in the salary of an officer is another and distinct subject, and being two separate and distinct subjects, they are prohibited from being combined in one act by the provisions of said section.*"

With more logic it can be said that the Hailey-Huston case presents a better reason for holding that there were not two subjects than does the instant case. We are unable to conceive of any logical reason that could be offered which would support the theory that the negotiation and sale of treasury notes and the refunding of outstanding state bonded indebtedness embrace but one subject and matters properly connected therewith.

Sec. 16, art. 3, positively prohibits embracing in the same act more than one subject and matters properly connected therewith, and where this is done the act is absolutely void even though done by the legislature with full knowledge. From an examination of House Bill 129, *supra,* and Senate Bill 98, 1923 Session Laws, page 106, passed on the same day, it is clear that the provisions of section 5 of House Bill 129 were surreptitiously amended. Senate Bill 98 is an act complete in itself, providing for the negotiation and sale of general fund treasury notes but carries no appropriation. In House Bill 129, an appropriation is provided for the payment of expenses incidental to the sale of general fund treasury notes and refunding bonds. It may be that

the legislature refused to pass Senate Bill 98, carrying an appropriation to pay the expenses incident to the negotiation and sale of treasury notes, and in order to obviate this difficulty there was slipped into House Bill 129 the words "general fund treasury notes." With these words eliminated, the act would relate solely to refunding bonds. The fact that it cannot be ascertained from the act how much was appropriated for the negotiation and sale of general fund treasury notes and how much was appropriated for the negotiation and sale of refunding bonds may afford an additional reason for holding the same void. This clause could have been inserted in any other act and it would have been just as consistent to hold that there was but one subject and matters properly connected therewith. Since there are two subjects embraced in the act and matters not properly connected therewith, clearly this act is repugnant to and in violation of sec. 16, art. 3, of the constitution and the entire act must fall. The principle of law announced by this court in *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295, is peculiarly applicable to the situation before us, wherein the court says: "The object and purpose of said constitutional provision is well understood. It was to prohibit the practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection; to prohibit 'hodgepodge' or 'logrolling' legislation. (Cooley's Constitutional Limitations, 172.) It was to avoid improper influences which may result from an intermingling in one and the same bill such things as have no proper relation to each other."

We think the act is subject to another very serious, if not fatal objection, in this, that it fails to provide that the refunding bonds shall be sold at face or par value and accrued interest. Under this act, the treasurer, with the approval of the Governor, may sell these refunding bonds at less than par and accrued interest. The act also fails to provide ways and means for the payment of interest as it falls due and also for the payment and discharge of the

37 Idaho.—3

principal debt, namely, the refunding bonds. The act further provides that these refunding bonds may run for a period not greater than twenty years. Certain of the bonds sought to be refunded are payable at the option of the state at the end of ten or twenty years. The act does not repeal or amend former acts providing for the issuance and sale of the original bonds but in terms extends the date of payment within the discretion of the State Treasurer with the approval of the Governor to a period of twenty years, thereby denying the right of the state to exercise its option or to pay off the bonds whenever there shall be funds for that purpose as provided in former acts. (1911 Sess. Laws, 104; 1913 Sess. Laws, 489.)

The issuance of a writ of mandate is discretionary and when there is grave doubt justifying its issuance this discretion should not be exercised.

It is ordered that the alternative writ be quashed and the action dismissed.

Dunn and Wm. E. Lee, JJ., concur.

McCARTHY, J., Dissenting.—Const., art. 3, sec. 16, provides: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title . . . . "

Sec. 5 of the act in question provides for an appropriation of $3,000 to pay any expense, including legal services, incident to the negotiation and sale of general fund treasury notes and refunding bonds. Defendant contends that the act therefore embraces two unconnected subjects, to wit, first, the issuance of refunding bonds and payment of expenses in connection therewith, and second, the payment of expenses incident to the sale of general fund treasury notes.

"The objection should be grave, and the conflict between the constitution and statute palpable before the judiciary should hold a legislative enactment unconstitutional upon the sole ground that it embraces more than one subject. . . . .

"If the provisions of an act all relate directly or indirectly to the same subject, have a natural connection therewith, and are not foreign to the subject expressed in the title, they may be united in one act. . . . .

"However numerous the provisions of an act may be, if they can be, by fair intendment, considered as falling within the subject matter legislated upon in such act or necessary as ends and means to the attainment of such subject, the act will not be in conflict with said constitutional provision." (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295.)

"The prohibition in the Constitution against enacting laws which embrace more than one subject must be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical and natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection or relation to each other. All that is necessary is, that the act shall embrace some one general subject; and by this is meant merely that all matters treated of should fall under some one general idea, and be so connected with and relate to each other, either logically or in popular understanding, as to be parts of and germane to one general subject." (*Johnson v. Harrison,* 47 Minn. 575, 28 Am. St. 382, 50 N. W. 923.)

I conclude that the two matters of refunding bonds and general fund treasury notes are embraced within the one general subject of state indebtedness, or state securities, and are sufficiently connected or related to permit their inclusion within the act without violating the constitution.

I am unable to agree with the other reasons given by the majority opinion for holding the act unconstitutional. The constitution does not require that state bonds must be sold at face or par value and with accrued interest. However, under the existing circumstances, the bonds proposed to be issued could not be sold for less than par. It is admitted that the present indebtedness is $2,000,000, the limit fixed

by Const., art. 8, sec. 1. The act provides that the total amount of refunding bonds issued at any one time shall not exceed the total amount of the bonds to be refunded. If the refunding bonds were sold for less than par the proceeds would not take up an equal amount of the old bonds, and the constitutional limitation would be exceeded. Thus as a practical matter the application of the statute to the existing facts would not permit the sale of the refunding bonds for less than par. The statute provides that the indebtedness shall be refunded only when it will result in a saving, and it is admitted that such will be the result in this case. The constitution does not require that the specific statute which provides for the issuance of bonds must also provide ways and means for their payment, nor that refunding bonds must run for the same term as the originals.

I do not wish to be understood as approving of the neglect in the past to provide a sinking fund to take care of the outstanding bonded indebtedness. It is that neglect which gives rise to the need for refunding, but it constitutes no legal or constitutional objection. It is not the function of this court to pass upon the wisdom of a legislative fiscal policy.

The issuance of a writ of mandate is within the discretion of the court, but this means sound legal discretion. An act of the legislature should not be set aside unless it appears beyond all reasonable doubt that it violates some provision of the constitution. (*Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *Gillesby v. Board of County Commrs.,* 17 Ida. 586, 107 Pac. 71.) I conclude that the statute is valid, that the case calls for its enforcement, and that the permanent writ of mandate should issue.

Mr. Justice William A. Lee authorizes me to state that he joins in this dissenting opinion.