(No. 5977. April 19, 1933.)

E. C. REYNARD, Appellant, v. THE CITY OF CALD-WELL, IDAHO, a Municipal Corporation, and FRED L. LILLY, as Mayor of Said City of Caldwell, Idaho, and EMERY BALES, JOE DICKENS, CARL JOHN-STON, ART KEISTER, M. S. SANDMEYER and EMERY VASSAR, as Councilmen of Said City of Caldwell, Idaho, C. D. RUSH, as City Clerk of Said City of Caldwell, Idaho, and HARRY E. PARMEN-TER, as City Treasurer of Said City of Caldwell, Idaho, Respondents.

[21 Pac. (2d) 527.]

Delana & Delana and M. H. Eustace, for Appellant.

Stewart S. Maxey and S. Ben Dunlap, for Respondents.

WERNETTE, J.—This is an action commenced by appellant against the City of Caldwell, its Mayor, Council, Clerk and Treasurer, for an alternative writ of mandate to compel respondents to make provision for, and pay into the improvement fund, special assessments levied against city property for local improvements.

During the years of 1919 and 1920, the City of Caldwell organized Local Improvement Districts Numbers 2 and 4, for the purpose of paving certain streets within said districts. Property belonging to the city, known as the city library, city park and city garage, was included in the two districts,

the said city property fronting on the streets that were being paved. The ordinary steps were taken in creating the improvement districts, and, among other things,- an assessment-roll was prepared by the street committee, which included the city engineer and two members of the city council. The street committee attempted to determine the amount of benefit that would inure to the property known as the city library, city park and city garage, by reason of the improvements, and attempted to assess said public property on a front-foot basis in accordance with the benefits accruing to the property, in the same manner as all other property within the districts was assessed. The city council after notice was given, confirmed said assessments. Opportunity was given the property owners within the districts to then pay the assessments made on their respective properties, and certain cash payments were so made. Local improvement bonds of the improvement districts were then issued to pay the balance of the cost of the improvements, and were sold to the appellant and others, appellant now being the owner and holder of some of said bonds. The interest and instalments of the bonds were paid regularly, without default, until January 1, 1931, but the city did not make any of the payments of the assessments levied against its property in said districts. Now there is insufficient money in said improvement districts' funds to pay any of the unpaid bonds, some of which are held by the appellant.

An alternative writ of *mandamus* was issued, based upon an amended application therefor, supported by a second amended affidavit. Respondents filed a general and special demurrer and a motion to quash. After hearing, the lower court sustained the demurrer to the application or petition, granted the motion to quash, and dismissed appellant's action.

Appellant has perfected this appeal, alleging as error the court's action in sustaining the demurrer, granting the motion to quash and dismissing the action. The most important question presented is, did the city have the right to levy the special assessments against its own prop-

erty to pay for the special benefits derived by such property, by reason of the improvements made? If so, it must be by reason of constitutional provisions and statutes of the state pertaining thereto. Article 7, section 4, of the state Constitution reads as follows: "The property of the United States, the state, counties, towns, cities, and other municipal corporations and public libraries shall be exempt from taxation."

There is a well-recognized distinction between an assessment for special improvements and the levy of a tax, and while the power to levy special assessments comes from the general power of taxation, the two should not be confounded. General taxes are a public imposition levied for the purpose of carrying on the government, an assessment is induced by request, made known according to charter provisions or general law of the majority of the inhabitants of the assessment districts, or under some statute by determination of the question of the public needs, and is levied for the benefit of the property situated in a particular district. An assessment, wholly dependent on the benefits to accrue, is not a tax within the purview and meaning of the constitutional provision above stated, but a charge *in rem* against the special tracts of land assessed for benefits.

There being a real distinction between the rule applicable to special assessments and the constitutional and statutory provisions pertaining to taxation and exemption from taxation, therefore the special assessments in question are not prohibited by reason of our said constitutional provision (18 Cal. Jur. 1047–1049; 44 C. J. 538; *Elliott v. McCrea*, 23 Ida. 524, 130 Pac. 785).

Referring to the constitutional provisions with reference to the incorporation, organization and classification of cities and towns, we think that the Constitution, article 11, sections 1 and 2, clearly confers power upon the legislature to provide for the incorporation, organization and classification of cities, and that such cities and towns shall have the power and authority given them by the laws enacted by the legislature, subject only to the constitutional

limitation as found in article 8, section 3, which provides: "No county, city, town, township, board of education, or school district, or other subdivision of the state shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election . . . . " And where the legislature enacts laws providing the method to be adopted and followed by the cities and villages in making local improvements, such cities and villages are required to pursue the methods and provisions of the law authorizing such improvements. (*Byrns v. City of Moscow,* 21 Ida. 398, 121 Pac. 1034.) The following sections of C. S., 1919, and the Idaho Code Annotated, with regard to improvement districts in municipalities, their creation, method of making improvements, and method of assessment to pay for the cost thereof, are particularly applicable with reference to the issues raised.

C. S., sec. 3942. "Establish, lay out, alter, open any streets or alleys, and improve, repair, light, grade or sprinkle, drain the same and remove any and all obstructions therefrom, establish grades and construct bridges, crosswalks, culverts and sewers thereon and repair and maintain the same; cause to be planted, set out and cultivated shade trees along the lines thereof or therein; and defray the costs and expenses of the same out of the general fund of such city or village, not exceeding 2 mills of the levy for general purposes, or defray the costs and expenses of the same by a special assessment in accordance with the provisions of sections 3944 and 3999 to 4028, inclusive."

I. C. A., sec. 49–1106. "Sidewalk, curb, plank, pave, gravel, macadamize, gutter, grade or sprinkle any highway, street or alley therein, in whole or in part, and levy a special tax on the lots and parcels of land fronting, contiguous or tributary on such highway, street or alley to pay the expense thereof. . . . . "

I. C. A., sec. 49–2701. "Assessments made under the provisions of sections 3942 of Idaho Compiled Statutes and

49–1106 of Idaho Code shall be made, assessed and collected in the manner provided in the following sections, 49–2702 to 49–2730, inclusive, of Idaho Code.''

I. C. A., sec. 49–2702. ''The assessment of the cost and expense of any work or improvement provided for in sections 3942 of Idaho Compiled Statutes and 49–1106 of Idaho Code shall be assessed upon the abutting, contiguous and tributary lots and lands, and lots and lands included in the improvement district formed, each lot and parcel of land being separately assessed for° the full debt thereof in proportion to the number of feet of such lands and lots fronting thereon or included in the improvement district, and in proportion to the benefits derived to such property by said improvement sufficient to cover the total cost and expense of the work to the center of the street.''

I. C. A., sec. 49–2703. ''The expense of all improvements in the space formed by the junction of two or more streets, or wherein one main street terminates in or crosses another main street, and also all street crossings or crosswalks shall be paid by such city or village: Provided, however, That in the event such improvement is requested by petition of the resident owners of property subject to assessment, and such petition shall request that the cost of the improvement be assessed against all the property in such improvement district in proportion to the benefits derived, and is signed by 70 per cent of the resident owners of property within such district subject to assessment, the council or trustees may in its discretion assess such expense against all of said property in proportion to the benefits derived from such improvement, but the intention of the council or trustees to so assess said expense must be stated in the resolution or ordinance declaring its intention to make such improvement.''

I. C. A., sec. 49–2707. ''By the provisions of such ordinance a local improvement district shall be established, to be called 'Local Improvement District, No. ——,' which shall include all the property fronting or abutting on, contiguous or tributary to the street to be improved, between the points named in such resolution or ordinance to the distance back

from such street, if platted in blocks to the center of the block; if platted in lots to the center of the lots; and if not platted to the distance of 125 feet.

"Such ordinance shall provide that such improvements shall be made and that the cost and expense thereof shall be taxed and assessed upon all property in such local improvement district, which cost shall be assessed in proportion to the number of feet of such lands and lots fronting thereon, or abutting, contiguous or tributary thereto, and included in said improvement district and in proportion to the benefits derived by said improvement: Provided: That the city council or trustees may expend from the general fund for such purposes such sums as, in their judgment, may be fair and equitable in consideration of benefits accruing to the general public by reason of such improvement."

I. C. A., sec. 49–2728. "The holder of any bond issued under the authority of this chapter shall have no claim therefor against the municipality by which the same is issued, in any event, except for the collection of the special assessment made for the improvement for which said bond was issued, but his remedy, in case of nonpayment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on the face of each bond so issued."

The respondents set forth the proposition, that while it is competent for the law-making powers to include public property belonging to a city or county within the limits of special assessments for public improvements, yet such property is not so included unless it is so by express enactment or clear implication. In 4 Dillon on Municipal Corporations, 5th ed., p. 2577, sec. 1446, the author says:

"The principle which makes property of the state or of any of its political or municipal subdivisions non-taxable under general statutory provisions and in the absence of a positive direction therefor, according to the great weight of authority, also precludes the imposition of a special assessment for a street or other local improvement upon such

property, unless there is positive legislative authority therefor.''

61 C. J. 359 announces the rule as follows:

''As a general rule, and in the absence of express statutory authority, public property, when devoted to public use, including not only the property of the state itself, but also the public property of its political subdivisions, such as counties and municipal corporations, is not subject to taxation.''

In 2 Cooley on Taxation, 4th ed., p. 1312, sec. 621, the rule is thus stated:

''Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for public purposes. All such property is taxable, if the state shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the state and by all its municipalities for public purposes was intended to be excluded, and the law will be administered as excluding it in fact, unless it is unmistakably included in the taxable property by the constitution or a statute. . . . . It is also held upon the same grounds that precluded general taxation that a city or village cannot without statutory permission, subject state, county, or school district property to assessment for local improvements.''

In Hamilton on the Law of Special Assessments, p. 233, sec. 281, we find the following quotation:

''With this exception, all other public property is assessable if so provided by legislation, for it is unquestionably

competent for the law making power to authorize the lands of the state, or public property belonging either to municipal corporations or political subdivisions to be subject to special assessment, but it will not be deemed included unless by special enactment or necessary implication.''

44 C. J. 525 states the following rule:

''In accordance with well settled general principles, elsewhere considered, statutory authority is necessary to authorize a levy of an assessment upon this class (city property) of property, and the statute relied upon as conferring the power must show the intent to make the property assessable.''

In the case of *City of Pittsburgh v. Sterrett Sub-School District*, 204 Pa. 635, 54 Atl. 463, 61 L. R. A. 183, the court said:

''We must be guided by the well established rule that it is always to be assumed that the general language of statutes is made use of with reference to taxable subjects, and the property of municipalities is not in any proper sense taxable . . . .

''Words of a statute applying to private rights do not affect those of the state . . . . the general business of the legislative power is to establish laws for individuals, not for the sovereign, and when the rights of the commonwealth are to be . . . . affected the intention must be plainly expressed or necessarily implied . . . .

''As the proceeding is statutory, it is exclusive, and must be pursued in the enforcement of the claim. There is no personal liability of the owner of the property . . . .

''We think it clear, therefore, . . . . that the language used in the act does not apply to property held by the state or any of the public subdivisions held for public use. The statute, in imposing the burden, does not discriminate between private and public property, and does not expressly place it upon public property. The . . . . property is therefore presumably exempted from the operation of the act, and the lien sought to be enforced herein has no statutory authority which is necessary to its validity to support it.''

In the case of *Robb v. Philadelphia,* 25 Pa. Super. Ct. 343, the court made the following statement as to the law:

"Property belonging to the state and its municipalities, and which is held for governmental purposes, is presumed to be exempt, and is not included in any designation of property to be taxed, however sweeping, unless the statute authorizing the tax expressly so provides."

In the case of *City of Inglewood v. Los Angeles County,* 207 Cal. 697, 280 Pac. 360, 363, the court stated:

"Taxation for local improvements, or for city, county or town purposes, involves exercising of the same power which is exerted for taxation for state or general purposes. It is a sovereign power of the state, in both cases, which authorizes the tax, whether that power be exerted directly by an act of legislature, or by a municipal body as an instrumentality of the state. . . . . While publicly owned or used property is not exempt from special assessments under the Constitution or statutory law of this state, there is an implied exemption of such property from burdens of that nature."

Other cases to the same effect are: *Green v. Hotaling,* 44 N. J. L. 347; *Dowdney v. Mayor of City of New York,* 54 N. Y. 186; *State v. Several Parcels of Land,* 79 Neb. 638, 113 N. W. 248; *Herman v. City of Omaha,* 75 Neb. 489, 106 N. W. 593; *St. Louis v. Brown,* 155 Mo. 545, 56 S. W. 298; *Barber Asphalt Paving Co. v. St. Joseph,* 183 Mo. 451, 82 S. W. 64; *City of Huntsville v. Madison County,* 166 Ala. 389, 52 So. 326, 139 Am. St. 45; *City of La Grange v. Troup County,* 132 Ga. 384, 64 S. E. 267, 16 Ann. Cas. 885; *City of Mt. Sterling v. Montgomery County,* 152 Ky. 637, 153 S. W. 952, 44 L. R. A., N. S., 57; *Powell v. City of Walla Walla,* 64 Wash. 582, 117 Pac. 389; *Worcester County v. Worcester,* 116 Mass. 193, 17 Am. Rep. 159; *City of Clinton v. Henry County,* 115 Mo. 557, 22 S. W. 494, 37 Am. St. 415; *People ex rel. Doyle v. Austin,* 47 Cal. 353; *State v. Kelburn,* 81 Conn. 9, 69 Atl. 1028, 129 Am. St. 205; *Schenectady v. Union College,* 144 N. Y. 241, 39 N. E. 67, 26 L. R. A. 614;

*Smith v. Buffalo*, 159 N. Y. 427, 54 N. E. 62; *Gardner v. City of Paducah*, 226 Ky. 652, 11 S. W. (2d) 693.

We believe that the rule above announced is supported by the weight of authority, and is the most logical for the protection of the general public. If there is any good reason why public property should be liable for special assessments, the legislature can readily enact law to make it specifically so. It may be said that it would only be fair that the city should pay its just proportion for the special benefit, which its property derived by reason of the improvement, but that is a matter for the legislature, not for the courts.

▇ Counsel for appellant have cited some very respectable authority contrary to the view we have taken. Appellant takes the position that under section 49–2702 and section 49–2707 of the Idaho Code Annotated, specific provision is made, both by express terms and implication, making public property subject to these special assessments, in that it is specifically stated that whatever improvement is made, the cost and expense thereof shall be taxed against all property in the local improvement district, and the cost shall be assessed in proportion to the number of feet of such lands, and lots, fronting thereon, abutting or contiguous thereto, included within the improvement district, in proportion to the benefits derived by such improvement. It is to be noted that in said two sections no mention is made of exempting any public property within the district from such assessments, nor is there any public property included by express terms. In considering these provisions, the entire constitutional and statutory scheme of municipal finance of the state pertaining to such improvements must be considered together, so as to ascertain what the legislative intent was. The various sections should be so construed as to give each provision, if possible, force and effect. Certainly it cannot be considered that the legislature intended that the specific part of section 49–2707, I. C. A., namely: "Provided that the city council or trustees may expend from the general fund for such purposes such sums as, in their judgment, may be fair and equitable in consideration of

benefits accruing to the general public by reason of such improvement,'' was intended to give the city the right or authority to pay for all of the improvements to be made within the district. This particularly in view of the other part of said section and also section 49–2702, providing that all of the property should be assessed, and according to the benefits derived, on a front-footage basis. Nor can it be contended that the said provision above quoted was for the purpose of giving the city opportunity to pay for the costs of intersections, for the reason that section 49–2703, I. C. A., above quoted, specifically provides a method for the payment of the costs of intersections, in that said expense is to be paid for by the city or village except, when requested by petition of seventy per cent of the resident owners within the district, it may be assessed against all of the property within the district.

Appellant insists that that portion of section 49–2707, I. C. A., last above quoted, is to be construed with reference to section 49–2703, I. C. A., and refers merely to the costs of the intersections. We do not believe that such could have been the intent of the legislature, either from the language used in section 49–2707, and by reason of language used in other sections which we will refer to. Had the legislature intended that the last quoted provision in section 49–2707 should refer only to the costs of intersections, it undoubtedly would have so stated in express language. No reference is made whatsoever that said provision should apply to the costs of intersections, but refers specifically to the benefits accruing to the general public by reason of the improvements. Then when we consider further that the assessments are by statute made a lien against the property within the district, sections 49–2709, 49–2716, 49–2725 and 49–2728, I. C. A., the bond owner's only remedy, in the event of nonpayment of any of such improvement bonds, is the foreclosure of his lien as against the property; that it was not the intention of the legislature that any public property owned within the district should be assessed.

Section 49–2728, I. C. A., expressly provides that the holder of. any bond issued under the provision of the article should have no claim therefor against the municipality by which the bond is issued, but his remedy in case of non-payment shall be confined to the enforcement of such assessment. In other words, he would have to foreclose his lien and look to the property for payment, but the property belonging to the public cannot be sold in order to satisfy the lien, and many of the cases above cited, which hold that public property cannot be assessed except when by statute expressly so provided, so hold. In fact, the authorities are quite unanimous in that regard, holding that if it were otherwise, thereby the instrumentalities by which the government is carried on would be destroyed, which cannot be.

In the event street improvements are made within a district, in which public property is situated, whereby the public property is specially benefited, naturally the general public would thereby be benefited. We believe that when the legislature enacted the various statutes pertaining to municipal financing of street improvements, it had that in mind, and when it provided as in section 49–2707, I. C. A., "that the city council or trustees may expend from the general fund for such purposes such sums as, in their judgment, may be fair and equitable in consideration of benefits accruing to the general public by reason of such improvement," it thereby expressly provided a way or means by which the city could pay its fair and equitable portion of the cost of the improvements. That such expenditure was to be made out of the general fund within the constitutional and statutory limitations, and within the city council's discretion and good judgment. But it required affirmative action on the part of the city council, other than assessments against the city property, to fix and determine the amount it considered fair and equitable for the city to pay out of the general fund for the benefits accruing to the general public, and provide for payment of the sum so determined, before any such payment could be made. No such steps were ever taken by the city council. The statute having provided a

specific method by which the city could pay its fair and equitable portion of the costs of the improvements, such method would be exclusive (*Herman v. City of Omaha, supra; Byrns v. City of Moscow, supra*), and would preclude the city from adopting any other method, or from levying special assessments against its own property, where no statutory provision is made for it.

Appellant has cited many cases to the effect that public property is subject to special assessment. Suffice it to say that in a large number of the cases so cited, special legislative authority has been enacted permitting public property to be so assessed. In others the assessments were made by the city, under city charter granting the city great latitude and power with reference to the improvement and assessing of property within the city. While there are some very respectable authorities cited to the effect that under general provisions by statute, where no express authority is provided, that public property may be assessed according to the benefits inuring to such property, we believe that the great weight of authority and best reasoning is otherwise. In none of the cases cited by appellant were we able to discover a constitutional and statutory scheme for municipal financing public street improvements, as we find in the constitutional and statutory law of this state. We were especially unable to find any case construing a statute like, or similar, to section 49–2707, I. C. A., where it was held that special assessments could be levied direct against the public property of the city, and thereafter compelling the city, by *mandamus,* to pay the assessments out of its general funds.

Under our constitutional and statutory provisions applicable, it seems plain that the legislature did not intend that the city should assume a direct liability by the indirect means of assessing its property. It is not contended that the City of Caldwell took any affirmative action, fixing the amount in its discretion, that the city was to pay for the improvements, as a fair and equitable sum to be paid for the benefits accruing to the general public. And until the

city council so in its discretion fixes and determines that amount, the city is not under an obligation to pay.

At, or about, the time when proceedings were instituted to organize said improvement districts, the City of Caldwell also made provision for an election authorizing the issuance and sale of general obligation bonds in the amount of $52,000, for the purpose of improving the streets and alleys, and particularly street and alley intersections within said improvement districts. The election was held, authorizing the issuance and sale of said bonds, which were later issued and sold, and after the costs of all intersections in said districts were paid for, there remained approximately $10,000 in cash which had not been used. Appellant contends, most earnestly, that said $10,000 was available to the city for the payment of the assessments made against the public property in said districts. That contention of the appellant is met with the fact that the city has never affirmatively determined what amount, if any, it should pay as the city's fair and equitable portion of the costs, taking into consideration the benefits accruing to the general public. Such determination is a prerequisite before the city is under obligation to pay.

There is still another reason why the position of appellant is untenable. This action is brought to compel the city to make provision for and pay into the improvement fund the assessments made against the city's property. The general obligation bonds were voted for, issued and sold to provide funds for the purpose of improving the streets and alleys, and particularly street and alley intersections, not to pay the assessments made against the city's property, which the city under the law never was authorized to make. Nor is it shown that the city ever included within its annual appropriation bill any sum for the purpose of paying these assessments. Section 4053, C. S. 1919, reads as follows:

"The city councils of cities and boards of trustees in villages shall, within the first quarter of each fiscal year, pass an ordinance to be termed the annual appropriation

bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year. . . . .

"Such ordinance shall specify the object and purposes for which such appropriations are made, and the amount appropriated for each object and purpose.

"No further appropriation shall be made at any other time within such fiscal year unless the proposition to make each appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them or at a general election duly called therefor, and all appropriations shall end with the fiscal year for which they were made."

Section 49–1716, I. C. A., further provides:

"Before such annual appropriation bill shall be passed the council or trustees shall prepare an estimate of the probable amount of money necessary for all purposes to be raised in said city or village during the fiscal year for which the appropriation is to be made, including interest and principal due on the bonded debt and sinking fund, itemizing and classifying the different objects and branches of expenditures as near as may be with a statement of the entire revenue of the city or village for the previous fiscal year, and shall enter the same at length upon its minutes and cause the same to be published four weeks in some newspaper published, or of general circulation, in the city or village."

It is to be noted that the legislature has very carefully guarded the rights of the public, providing that the annual estimate shall be published for four weeks before the annual appropriation bill is passed, so as to give notice to everyone what it proposes to do, and to give an opportunity to anyone to appear and protest any item that may be objectionable. Such provisions, as last above quoted, are mandatory. (5 McQuillin on Municipal Corporations, 2d ed., p. 961, sec. 2331.)

Appellant cites the case of *McEwen v. City of Coeur d'Alene,* 23 Ida. 746, 132 Pac. 308, in support of his contention. Upon an examination of that case, it is to be found that the city had properly included within the annual appropriation bill the amount it intended to spend on the public improvements in question, and the amount was carefully kept within the constitutional and statutory limitations. Section 49–1717, I. C. A., expressly provides that expenditures cannot exceed the appropriation, with few exceptions which are not applicable. It reads as follows:

"The mayor and council, or board of trustees, shall have no power to appropriate, issue or draw any order or warrant on the treasurer for money unless the same has been appropriated or ordered by ordinance, or the claim for the payment of which such order or warrant is issued, has been allowed according to the provisions of this chapter, and appropriations for the class or object out of which such claim is payable has been made as provided in section 49–1714. Neither the city council nor board of trustees, nor any department or officer of the corporation, shall add to the corporation expenditures in any one year anything over and above the amount provided for in the annual appropriation bill for the year, except as herein otherwise specially provided; and no expenditures for an improvement to be paid for out of the general fund of the corporation shall exceed in any one year the amount provided for such an improvement in the annual appropriation bill. . . . . "

That the expense of paving the streets in question was not an ordinary and necessary one is definitely established. (*Dunbar v. Board of Commrs.,* 5 Ida. 407, 49 Pac. 409; *Byrns v. City of Moscow, supra; Thomas v. Glindeman,* 33 Ida. 394, 195 Pac. 92; *Dexter Horton Trust & Savings Bank v. Clearwater County,* 235 Fed. 743.)

Appellant contends that the presumption is, that the indebtedness incurred by the city is valid and not within any constitutional debt limitation, and there was a proper budget and necessary appropriation made, that in any event

those are matters of defense, citing many cases. None of the cases cited involved *mandamus* proceedings, but were actions to enforce contractual rights and liabilities, where the authorities so hold. This is not an action on contract, as appellant is not suing on his bonds, but is attempting to enforce a statutory duty; the payment of special assessments into a certain fund. An action on contract is one to establish a legal right, but the purpose of the writ of mandate is to enforce a right which has already been established. There is a vast distinction in the two causes of action. The rule is best stated in 38 C. J. 582, sec. 56:

"Since the purpose of a writ of *mandamus* is not to establish a legal right but to enforce one which has already been established, the legal right of plaintiff or relator to the performance of the particular act of which performance is sought to be compelled must be clear and complete. Indeed, it has been said, and with good reason, that the right to its performance must be so clear as not to admit of reasonable doubt or controversy. The legal right under consideration embraces 'not only the character of the claim, but also the form in which it is presented,' and this must be determined by the state of the law and facts existing at the time the proceeding was taken."

In order to entitle appellant to the relief sought, it was incumbent upon him to show that the statutory provisions, above mentioned, had been complied with. They were in the nature of conditions precedent, which it was incumbent upon appellant to show had been fulfilled in order to establish any right or duty of the city in his favor. Appellant's contention, therefore, cannot prevail for two reasons: First, because it was not shown that the city had lawfully incurred any indebtedness, for the reason that the city council never fixed or determined any amount it considered fair and equitable for the city to pay out of its general fund for the benefits accruing to the general public by reason of the improvements made. Second, the item never was included within a budget or annual appropriation bill.

Our statute expressly provides to whom and for what purposes the writ of mandate will issue. Idaho Code Annotated, section 13–302, provides:

"It may be issued . . . . to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station . . . . "

In the case of *Brooks v. Edgington*, 40 Ida. 432, 233 Pac. 514, this court held that a writ of mandate will not issue unless the party seeking it has a clear legal right to have the act done for which he seeks the aid of the writ, and it is the clear duty of the officer to act. And again so stated in the recent case of *Aker v. Aker*, 51 Ida. 555, 8 Pac. (2d) 777; see, also, *Logan v. Carter*, 49 Ida. 393, 288 Pac. 424; 38 C. J. 582.

The allowance or refusal of the writ of mandate is a matter of discretion with the court before whom the application for the writ is heard. (*State v. Banks*, 37 Ida. 27, 215 Pac. 468; *State v. Malcom*, 39 Ida. 185, 226 Pac. 1083; *Logan v. Carter, supra;* 38 C. J. 547; 16 Cal. Jur. 768.) When there is grave doubt justifying its issuance, the court should not issue the writ. (*State v. Banks, supra;* 38 C. J. 550.)

In view of the conclusions reached, appellant is not entitled to a writ of mandate, and the court did not err in sustaining the demurrer, quashing the writ and dismissing the action.

We have considered the other questions presented in the briefs of the respective parties, but they are not decisive of this case and need not be further considered.

Judgment affirmed. Costs to respondents.

Givens, Morgan and Holden, JJ., concur.

Sutphen, D. J., concurs in the conclusion reached.