373 P.2d 322

Donald HUNKE, Robert L. Drexler and Derald Wright, Plaintiffs and Respondents,

v.

Donald FOOTE, Karl Page, Phillip Leahy and Alex Creek, Councilmen of the City of Idaho Falls, Idaho, W. J. O'Bryant, Mayor of the City of Idaho Falls, Idaho, Defendants and Appellants.

No. 9061.

Supreme Court of Idaho.

July 11, 1962.

George Barnard, Idaho Falls, for appellants.

Eugene Bush, Idaho Falls, for respondents.

KNUDSON, Justice.

This appeal is from a decision of the district court granting a peremptory writ of mandamus requiring appellants (defendants) as administrative officers, mayor and councilmen of the city of Idaho Falls (hereinafter referred to as City) to remove an electrical substation from an area zoned by the city ordinance as residential. Respondents (plaintiffs) are residents of and taxpayers in the immediate vicinity of such substation.

The City owned parcel of land involved is rectangular in shape and is situate in the northwest portion of Temple View Park, a subdivision of the City, upon which the City has for some time prior to 1955 maintained a water well and pump house.

By ordinance No. 852 enacted by the City in 1955, the area surrounding and including the City owned tract was zoned as "R 1 Residence District" (specifically limited to residences).

Subsequent to September 1, 1960, and prior to the filing of this action (April 11, 1961) the City caused to be constructed upon the City owned tract, an electrical power substation which is to be used in part to distribute for sale electrical energy for power and light to private customers of the City. The substation consists of a large transformer, switch gear, 6 towers on steel legs with support structures placed in concrete.

Appellants admit that respondents' properties will be depreciated in value to some extent by the installation and use of the substation.

Although error has been assigned as to a number of the court's rulings and findings the principal question presented to and considered by the trial court and which is here for decision is whether the City is subject to and bound by its own zoning ordinance No. 852.

The validity of ordinance No. 852 is not questioned. Under its provisions the well and pump house, having been in existence on the subject property prior to the effective date of the ordinance, may be continued as non-conforming uses, but may not be enlarged. The ordinance also provides that an unauthorized or non-permitted use of property within the respective districts created thereunder, is declared to be a common nuisance and may be abated as such.

Appellants do not contend that the construction and maintenance of the electrical power substation which the City has caused to be erected is a use permitted under the terms of said ordinance within the area involved, but they do contend, inter alia, that the City is not bound by the provisions of said ordinance. In support of appellants' argument they cite Nehrbas v. Incorporated Village of Lloyd Harbor, 1 A.D.2d 1034, 152 N.Y.S.2d 28 and Washington Twp. v. Ridgewood Village, 26 N.J. 578, 141 A.2d 308. In each of these cases the court determined that the use sought to be restrained was a governmental function and therefore we do not consider them to be in point in this case since we are not here dealing with a governmental function.

■ The authority of the City to enact a zoning ordinance or to own and operate its own electric light and power plant and distribution system is not questioned. The ordinance specifically prohibits the use of any territory embraced in the district within which the substation has been constructed for anything but residential purposes as defined in the ordinance. In reliance upon the ordinance the district has been developed pursuant to its limitations and mandates. The City now proposes to destroy its own plan which it imposed upon the property holders of the district. We think that cannot be done.

■■ It has long been generally recognized that while municipal corporations are primarily incorporated as political subdivisions of the state for the purpose of performing local governmental functions, they generally are authorized to and frequently do exercise two classes of power of which one is governmental while the other is referred to as proprietary. When operating in its proprietary capacity a municipal corporation is subject to the same burdens, responsibilities and liabilities as a private corporation or individual acting in the same capacity. (Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541)

It is admitted the substation herein involved will be used largely to distribute for sale electrical energy for power and light to private customers of the City. In Eaton v. City of Weiser, supra, this Court had under consideration a city owned and operated electrical light system for the purpose of lighting its streets and selling to the inhabitants of the municipality electrical energy for lights, etc., and in determining the capacity in which the city was acting stated:

"The city was engaged in a private enterprise, namely, that of manufacturing and selling electric light to its inhabitants. Such an engagement or enterprise is not one of the public governmental duties of municipalities. Mu-

nicipal ownership in the usual and common acceptation of that term must of necessity carry with it the same duty, responsibility, and liabilities that are imposed upon and attach to private owners of similar enterprises. If the city owns and operates an electric light system, and sells lights to its inhabitants, there is no reason why it should not be held to the same responsibility for injuries received on account of its negligent conduct of the business as would a private individual be who might be running an opposition plant in the same municipality and selling light to the citizens thereof."

The applicable general rule is stated in 18 Am.Jur. 432, § 34, as:

"A city, in operating an electric plant to supply current to its inhabitants when authorized to do so, acts in its private, proprietary capacity and not in its public, governmental sphere, and, in the absence of a specific prohibition, it may exercise its rights and powers in the same manner and on the same footing as private individuals or corporations under the same circumstances."

The general rule is also stated in 63 C.J.S. Municipal Corporations § 746, p. 32 as:

"In the functions comprising the second class, that is, in the exercise of its purely municipal or proprietary functions, or the doing of those things which relate to special or private corporate purposes, the corporation stands on the same footing with a private corporation, * * *."

The decision in Eaton v. City of Weiser, supra, has been cited with approval many times and consistently followed by this Court. Boise Development Co., Ltd., v. Boise City, 30 Idaho 675, 167 P. 1032; Hooton v. City of Burley, 70 Idaho 369, 219 P. 2d 651; Lundahl v. City of Idaho Falls, 78 Idaho 338, 303 P.2d 667, 61 A.L.R.2d 866; Gilbert v. Village of Bancroft, 80 Idaho 186, 327 P.2d 378.

■ The trial court's finding "That in the operation and distribution of electrical power the City of Idaho Falls is acting in a proprietary capacity." is correct. The City's rights, powers and privileges while acting in that capacity are tantamount to individuals or corporations engaged in the same functions.

In O'Brien v. Town of Greenburgh et al., 239 App.Div. 555, 268 N.Y.S. 173, the Court had under consideration a request by property owners to enjoin the defendant town and its town board from erecting a garbage incinerator upon a designated plot within its corporate limits in violation of its own zoning ordinance. The Court held that in disposing of garbage the defendants were act-

ing in a proprietary capacity and were bound by the ordinance. The following are excerpts from the opinion:

"Briefly, the question presented is whether the town is precluded by its adopted ordinance from exercising the function of disposing of its garbage, as proposed by it, within the residence A district. In its present form, the question is novel and turns upon a proposition of law not briefed upon this appeal, and that is, whether the disposition of garbage and refuse constitutes a corporate or governmental function. If corporate, the plaintiffs are entitled to the relief sought, for the reason that in that capacity the town is bound equally with all other persons, whether individual or corporate, by the terms of its own ordinance. If governmental, the question of plaintiffs' rights may not be determined in advance of the construction and operation of the incinerator, especially in view of the refusal by the learned trial court to find upon the evidence that the operation of the plant will constitute a nuisance per se. With that ruling we are not inclined to interfere.

\* \* \* \* \* \*

"The right of the defendants to act under the authority conferred upon them in the disposition of garbage may not be questioned, but the wrong here involved is the contemplated erection of the plant in a restricted zone, violative of an ordinance adopted by the defendants and under which ordinance the plaintiffs acquired vested rights. The general authority conferred on the defendants to establish disposal plants did not involve an express or implied authority to establish them, or any of them, in violation of zoning ordinances adopted pursuant to the same source of power—the Legislature, and under which rights of individuals have become fixed."

The following rule is stated in 37 Am. Jur. 729, § 115:

"When operating in its proprietary capacity, a municipal corporation is said to be subject to the same burdens, responsibilities, and liabilities as a private corporation or individual acting in the same capacity, and it is held to follow logically that when acting in such capacity, it is entitled to rights, privileges and immunities accorded to others. In its governmental capacity, it may command; in its private character as a collection of individuals, it must sometimes barter and bargain. In the case of corporate activities, a municipal corporation *is bound* equally with all other persons, whether indi-

vidual or corporate *by the terms of its own ordinances.* If governmental, it is not so bound." (emphasis supplied)

In the instant case the City, in constructing the substation, was acting in a proprietary capacity and surely it would not be contended that a privately owned utility company could arbitrarily and in violation of the ordinance construct a substation such as appellants have done. We find no statutory sanction which will justify a conclusion that the legislature contemplated the doing of the very act which occasioned the injury here complained of. In such undertaking appellants are subject to the same standards and restraint as are applicable to a private individual or corporation in the conduct of a similar business.

Respondents contend that since they have no plain, speedy or adequate remedy at law, I.C. § 7–303 directs that a writ of mandate must issue. This Court has repeatedly held that mandamus is not a writ of right. The allowance or refusal of such writ is a matter of discretion with the court before whom the application for it is heard. Kerley v. Wetherell, 61 Idaho 31, 96 P.2d 503; Reynard v. City of Caldwell, 53 Idaho 62, 21 P.2d 527, 90 A.L.R. 1124; State v. Malcom, 39 Idaho 185, 226 P. 1083; State v. Banks, 37 Idaho 27, 215 P. 468; Logan v. Carter, 49 Idaho 393, 288 P. 424.

In reply to respondents' contention that they have no adequate remedy at law, appellants argue that respondents have available to them the right to recover damages by an action in the nature of inverse condemnation. Moreover, appellants contend that the City could at any time amend its ordinance by rezoning the tract on which the substation stands, or by making any building or structure necessary for municipal or public use a permitted use in any zone. They also contend that the City has power of eminent domain and could resort to condemnation of any site or area on a showing of public convenience and necessity.

It is important to a final disposition of this case that such contentions be considered by the trial court for two principal reasons: (1) To determine respondents' remedial rights; (2) To determine if the granting of the requested writ would in fact be the doing of an idle or useless act and whether in granting the remedy sought it would be burdensome to the public without any substantial equivalent benefit or advantage to respondents.

Appellants claim that the court erred in failing to consider the effect of granting a writ of mandamus on the public interest in this case. No doubt the trial court was strictly following the directive contained in the pre-trial conference order which provided that on the date trial was had, proof would be limited to the issue as to whether the City was bound by its own ordinance.

Other questions were to be heard at a later date, but this appeal was taken before any other matters were presented to the trial court.

Under the pleadings the appellants have raised the issue of comparative injury and during the trial sought to go into that phase of the matter, but the court refused appellants' offer of evidence and did not consider such contention. In matters of this kind it is proper to consider the interest of the public in determining whether the writ should issue. If the evils following the issuance of the writ will outweigh the evils sought to be corrected, the court may, in the exercise of its discretion, refuse to issue the writ even though respondents may have shown a clear legal right for which mandamus is an appropriate remedy. 55 C. J.S. Mandamus § 10, p. 33; Riley v. Carter, 165 Okl. 262, 25 P.2d 666, 88 A.L.R. 1018; United States ex rel. Greathouse v. Dern, 289 U.S. 352, 53 S.Ct. 614, 77 L.Ed. 1250; Salisbury v. Rogers, 252 App.Div. 223, 298 N.Y.S. 670. In Koseris v. J. R. Simplot Co., 82 Idaho 263, 352 P.2d 235, this Court stated that:

"The comparative benefits and hardships should be weighed in determining whether injunction is the appropriate remedy under the facts and circumstances in a particular case."

In view of the importance of the question involved we feel that the trial court should consider the effects flowing from the issuance of the writ.

██ The parcel of ground involved is described in the petition as being located "immediately to the rear of the premises in the City of Idaho Falls, Idaho, known as 879 and 885 Claire View Lane and 880 Sky Line Drive." A like description is used in the final order from which this appeal is taken. There is no claim or showing that any of the parties to this action have been in doubt as to the identity of the area in controversy or that they have been misled or prejudiced by the description used. However, it is inadequate. This Court has stated:

"A judgment which affects the title or interest in real property must describe the lands specifically and with such certainty that the court's mandate in connection therewith may be executed, and such that rights and liabilities are clearly fixed and that all parties affected thereby may readily understand and comply with the requirements thereof." Sinnett v. Werelus, 83 Idaho 514, 365 P.2d 952; Kosanke v. Kopp, 74 Idaho 302, 261 P. 2d 815.

██ The findings of fact of the trial court are supported by the record, how-

ever, since the record is clear that the court considered only the question of whether the City·is subject to and bound by its own zoning ordinance, we are not convinced that the court's conclusions of law (numbered 5 and 6) were sufficiently considered. Said conclusions are:

"5. That plaintiffs have no plain adequate or speedy remedy at law.

"6. That an Ordinance duly enacted by the City cannot be repelled (sic) or amended by motion of the governing body of said City."

Our decision that said conclusions should not at this time be approved does not signify that they are in error.

We have considered each of the assignments and conclude that the court erred in failing to consider the effect on the public interest of granting a writ of mandamus.

The cause is remanded with instructions (1) to modify the findings and order by setting forth therein with precission and particularity the dimensions, on the ground, of the area affected; (2) that the trial court receive and consider proper evidence from which it may determine the comparative equities and also pass upon the other contentions of appellants which constitute issues in this case. No costs allowed.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.